TALIAFERRO, Judge.
Plaintiff, who conducts a rooming house at Municipal Number 1002% Spring Street, in the City of Shreveport, Louisiana, sued the defendant to recover damages allegedly sustained by her because of the illegal and forcible entry by the defendant into said rooming house and. removal therefrom without legal process, of some bedsteads, mattresses and springs, owned by her. She alleged that in the consummation of said trespass and tort, the defendant uttered vile and loud epithets, made threats and displayed such a belligerent attitude that she became excited and nervous, and before his illegal acts were completed she fainted and fell violently to the floor; that she did not consent to the removal of said furniture; that when informed by one of 'her neighbors of the seriousness of his illegal and tortuous acts, defendant restored to the building the effects he had removed therefrom.
Defendant • resists the suit primarily upon the ground that plaintiff consented to the removal of the furniture after he had demanded payment by her of two past due monthly installments on its purchase price. He amplified this allegation by further alleging that on June 23, 1950, he sold to plaintiff six bedsteads, six mattresses and six bed springs, oil the price of which she then paid $33.26 and agreed to pay the balance in monthly installments of $18; that she defaulted in paying the first two installments and when requested to meet her obligation, she replied that she could not do so, and that he would have to take the furniture, pursuant to which consent, he, on the morning of August 31, 1950, drove his truck to the rooming house, with two colored men helpers, for the purpose of repossessing the unpaid-for furniture; that then and there plaintiff again agreed for him to take over and remove the furniture and he was in the act of doing so when a neighbor of plaintiffs asked if he was acting under a Court order, and on his negative reply this neighbor informed him that without such an order he could not lawfully do what he was then doing, and, therefore, he desisted in taking the furniture from the building; that he then sought his attorney for the purpose of suing out the necessary Court order to seize the furniture, but finding him engaged in the trial of a case in court and unable to render him prompt assistance, he returned to the scene and had the furniture replaced in the rooms from which it had been removed.
The Court sustained plaintiff’s contention and condemned defendant to pay her $350. From a judgment in keeping therewith, he appealed.
The testimony in the case, as might be expected, is quite conflicting.
Plaintiff owed defendant $229 on the price of the furniture. The amount was evidenced by note payable in monthly installments of $18, secured by mortgage and vendor’s lien on the furniture. She had made no payment on the price -of it since it was delivered to her.
Defendant testified that on August 29th he called on plaintiff at the rooming house and insisted that she pay the past due installments; that she then declared to him her inability to meet his demands and further stated that he would have to take over the property; that he took no action the following day, hoping that she would be able, in the meantime, to raise some cash to go on the debt, but receiving no word from her, he drove his truck to the premises the morning of August 31st to pick up the furniture, being accompanied by two colored helpers. He further testified that he first knocked on the front door and receiving no response, then went to the rear of the building and knocked on the kitchen door; that plaintiff appeared, admitted him, again expressed 'her inability to pay him any amount, accompanied him to the front door, unlocked it to admit the helpers, and that he went upstairs and began taking down and removing the beds, etc.; that they were so engaged when a lady appeared upon the scene and inquired if he was proceeding under an order of Court; that he replied: “No” as such was unnecessary, *646 since plaintiff liad authorized him to repossess the property without any Court proceeding's; that this lady informed him he would have to have an order of Court before he was authorized to take over the furniture; that he then had the helpers to place covering over the furniture that had been deposited upon the sidewalk to protect it from inclemency of the weather while he was away procuring the mentioned Court order; that being unable at the time, for the reasons assigned in his answer, to get the Court order, he returned and had the furniture replaced, and drove away. A few days thereafter he filed suit on the note and mortgage. It was not contested. In due time judgment was rendered in his favor, the furniture was seized and sold by the City Marshal.
The two colored helpers corroborated defendant’s testimony as regards the opening of the front door by plaintiff to admit them, and as regards plaintiff’s willingness, at the time, for him to take over the chattels. However, it is a little difficult to understand how they could be so positive on the subject when it is considered that they were at the time in the truck, then parked in the street in front of the building.
Defendant is positive plaintiff did not become nervous or excited while the furniture Was being removed, and that she did not faint while it was going on.
Plaintiff and her witnesses flatly contradict the testimony of defendant and his witnesses on the salient facts of the case. She positively denied that she authorized plaintiff to repossess the furniture, but says in each instance, when he demanded payment of the installments due him, she pleaded for further time in which to meet his demands.
The preponderance of the testimony, and several circumstances, sustain plaintiff’s position in the case.
The lower story of the building involved herein, at the time of the removal of the furniture, was occupied by one Robert Earhart, who conducted some sort of business therein. As a witness for the plaintiff he testified that he noticed that the furniture was being removed, at which time plaintiff came into his office crying and stated that: “They are taking my furniture”. The witness suggested that she use his telephone to call up the City Marshal and she proceeded to do so. Mrs. C. L. Paine, sister of Mr. Earhart, and who worked for him, testified that plaintiff was very nervous- and could not see well, so she did the ’phoning for her. She called the Marshal, who, inter alia, said that his office had already been notified about the matter.
Plaintiff further testified that defendant did not come into the house following his appearance at the kitchen door; that he then stated he was “going to get the beds down”; but at that time no effort was made to do so; that she became excited and walked over to the home of a neighbor, Mrs. O. P. Young, and very soon thereafter defendant appeared there and asked for her; that he asked her to come over and open the front door, asserting it was locked; that she told him it was not locked; that he then entered the house and opened the door and called to his helpers ; that he forced one roomer to get out of a bed in which he was sleeping, in order to remove it; that he used loud language and stated more than once that he had come to get the “damn” beds; that at this time she went into the office of Mr. Earhart, crying, and the telephoning, above mentioned, was done; that she then observed Mrs. Young coming in through» the kitchen door and at that moment she fainted, fell to the floor, on the way striking her head against a chair.
Mrs. Young corroborated plaintiff’s testimony in essential particulars. She saw her faint and revived her by bathing her face with a wet wash towel. She heard plaintiff ask the defendant to give her more time in which to meet her obligation, and also heard the defendant curse about the furniture and loudly express his determination to remove it. She voluntarily rang the police and informed them of the disturbance, and was referred to the City Marshal. She says she told defendant that he had “better be careful” in moving the furniture, and that he would have to bring the furniture back; that the other *647 lady (referring to Mrs. Paine) came upstairs and said to the defendant: “The City Marshal says you will have to have a Court order”, and he said: “Well, I will go and get a Court order”. Thereupon, defendant left the scene but returned in about thirty minutes and brought the furniture back into the house.
Study of the testimony leads to the conclusion that plaintiff did not consent to the removal of the furniture by the defendant. Her actions and demeanor at the time belie consent. The hysteria, excitement and crying on her part could not have been simulated. In addition, the testimony of Mr. Earhart and of Mrs. Paine, who can have no interest in the outcome of the case, other than to see justice done, goes far to support plaintiff’s contention. The fact that Mrs. Young voluntarily telephoned the police and requested intervention by them, indicates, at least, that something unusual was going on there. Lastly, it is passing strange that had defendant been authorized by plaintiff to repossess the furniture, he would have voluntarily abandoned his determination to do so.
Only questions of fact are involved in the case. The trial judge’s resolution of them should, and does, carry great weight.
Defendant, in the alternative, complains of the judgment as being excessive. He says that $100 would be adequate. In considering this phase of the case, it must be borne in mind that plaintiff was not deprived of the use of the furniture, even for one night. Plaintiff asks for increase in the award.
The cases cited by both sides have been considered. The facts of neither are on all-fours with the instant case. No actual damages have been proven. All things considered, it is our opinion that Two Hundred Fifty ($250.00) Dollars will amply compensate plaintiff for the embarrassment, mental distress, etc. she suffered from the trespass committed by defendant. We are inclined to think that she and Mrs. Young, in a measure, exaggerated the extent of the effect upon her of defendant’s conduct.
For the reasons herein assigned, the judgment from which appealed is amended by reducing it to Two Hundred Fifty Dollars, and, as thus amended, it is affirmed. Costs of the appeal are cast upon plaintiff. All other costs shall be paid by defendant.